554 P.2d 673

**Susan SUNDBERG, Plaintiff-Appellant,**

**v.**

**Lloyd A. HURLEY, Sidney Schultz, and Schultz and Hurley, a partnership, Defendants-Appellees.**

**No. 2398.**

Court of Appeals of New Mexico.
Aug. 24, 1976.

Rehearing Denied Aug. 30, 1976.

Certiorari Denied Sept. 27, 1976.

**512**

O. R. Adams, Jr., Albuquerque, for plaintiff-appellant.

James T. Paulantis, Johnson, Paulantis & Lanphere, Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

Plaintiff appeals an adverse jury verdict, and judgment entered thereon, in a medical malpractice case. Plaintiff charged defendant Dr. Hurley with failure, on examination of plaintiff, to discover that plaintiff had a slipped capital femur epiphysis. Of five points raised, only two merit our consideration. We affirm.

A. *The trial court did not err in refusing to admit a "letter" copy of Dr. Hurley for an admission purpose.*

Plaintiff contends the trial court erred in refusing to admit into evidence a copy of a "letter" dictated by Dr. Hurley on July 13, 1971, which "letter" contained a phrase: "Apparently she was in what has been described as a 'pre-slip state' * * *." We disagree.

This case involved a slipped fenur epiphysis. The femur is the thigh bone. The epiphysis is the head of the thigh bone. In a young person an epiphysis can gradually slip downward and backward on the neck of the femur. The two structures do not become completely separated. With the passage of time, callus tissue gradually forms in the angle between the head and neck of the femur, and the femoral neck becomes rounded. The growing bone grows down in a bad position, bone grows over and fills the angle, and a crippled hip results.

Dr. Hurley, an orthopedic surgeon, first saw plaintiff on June 25, 1968, regarding a knee injury. She was thirteen years old at the time. Dr. Hurley concluded that she had a definite injury to her knee at the lower end of the femur. Dr. Hurley testified that there was a possibility that she had a very early hip disease, but it was not a medical probability; that an orthopedic surgeon cannot be expected to make a diagnosis of the upper femur epiphysial disease in the early stages, particularly when there is no complaint of pain in the hip and no limitation of range of motion in the hip.

Plaintiff called Dr. Hurley as an adverse witness. Plaintiff's attorney handed Dr. Hurley a copy of a written instrument called a "letter", one which he had dictated on July 13, 1971, addressed to Mr. John Sundberg, father of plaintiff. Plaintiff's attorney sought to question Dr. Hurley about one quotation from the "letter" which he considered to be a written admission: "Q Doctor, don't you state in this letter and I quote—". Upon objection, the trial court asked to see the exhibit. In the absence of the jury, the trial court asked plaintiff to mark the "letter" as an exhibit so that the record would be clear. The following occurred:

MR. ADAMS: *I don't want to make it an exhibit. I don't purport to offer it all into evidence.* I wanted to elicit from Doctor Hurley what he dictated.

THE COURT: As a matter of procedure in this trial before we mark it as an exhibit—

MR. ADAMS: Your Honor, on the basis that Doctor Hurley has testified that he dictated this letter, *we would offer this, part of it, which we consider pertinent to this case.* I think the other side would have a right to bring out any other part that was admissible in an explanation or that is contrary, but—and I read this part into the record, *"Apparently she was in what has been described as a pre-slipped state at which time it*

*would be practically impossible to make a specific diagnosis without the aid of an X-ray."*

(Whereupon, Plaintiff's Exhibit 20 was marked for identification.)

THE COURT: Mr. Paulantis, would you state your objection for the record?

MR. PAULANTIS: Yes, sir. Your Honor, *we object to a reading from a letter* that was—which the Doctor never sent to Mr. Sundberg *and only taking one sentence out of a paragraph and taking it out of context of the whole paragraph.*

THE COURT: The objection to the entirety of Plaintiff's Exhibit 20 will be sustained on the grounds stated by Counsel and you have made your record as far as what portions of that letter you wanted to read into evidence, Mr. Adams.

MR. ADAMS: Thank you, Your Honor. [Emphasis added].

It is obvious that the identification of a copy of Dr. Hurley's written dictation, taken from Dr. Hurley's file, and the objections thereto, were properly carried forward by the court for the purpose of making the record clear. We gather from this procedure that plaintiff did not object to the identification of the "letter". But plaintiff wanted to offer in evidence only one sentence out of a paragraph of the "letter".

■ The instrument in writing was not a "letter" because there was no evidence that the contents were mailed to Mr. Sundberg, nor delivered as a message. 52A C. J.S. Letter p. 771 (1968). It was a private statement in writing, dictated by the doctor.

The paragraph in which the sentence was found, reads as follows:

In regard to Susan's case, let me please state that I feel that your allegations are definitely unfounded and unfair. When I first saw Susan, she had no complaints of hip pain and she had no physical findings related to the hip.

She had no spasm and no limited rage of motion. *Apparently she was in what has been described as a "pre-slip state", at which time it would be practically impossible to make a specific diagnosis without the aid of an x-ray.* Even x-ray interpretation would be difficult in this state. From a practical point of view it would simply be economically [sic] and impossible to x-ray every hip joint on individuals who present with complaints of knee pain. [Emphasis added].

The answer to this problem is a matter of first impression in New Mexico.

■ Plaintiff offered in evidence one sentence out of a paragraph of the written statement, *two pages in length.* "It is true that when part of a statement in any written form is thus offered against a party, it must be accompanied by all other relevant parts. All parts possibly tending to qualify the admissions or to present the whole effect of what was said or written on that point, must be given to the jury. [Citations omitted]. For it is to the sum total that the speaker has committed himself." *Holler v. Miller,* 177 Md. 204, 9 A.2d 250, 252 (1939); *Weaver v. Welsh,* 325 Pa. 571, 191 A. 3 (1937). Plaintiff did not offer all relevant parts of the written statement.

Plaintiff relies on *Mozert v. Noeding,* 76 N.M. 396, 415 P.2d 364 (1966). Here plaintiff offered in evidence a written statement of defendant as an admission of defendant. The language in one sentence of the statement was important as substantive evidence. The trial court erroneously denied admission of the written statement. This case is not applicable. Plaintiff in *Mozert* sought admission of the entire statement. Plaintiff did not seek admission of one sentence out of a paragraph of the written statement.

In the instant case, plaintiff did not offer the written statement in evidence.

■ Defendant's objection to the offer of plaintiff was proper and the ruling of the court correct. See also, *29 Am.Jur.2d*

Evidence § 599 (1967); 31A C.J.S. Evidence § 375b (1964); 7 Wigmore, Evidence § 2102 (1940). Plaintiff cannot claim error in this respect.

B. *The trial court did not err in allowing Dr. Hurley to testify as to the contents of hospital records not in evidence.*

On direct examination of Dr. Hurley, he was asked three questions:

Q   *   *   *   [D]o the hospitals keep a record as to stating by number or something like that what the particular complaint or disease is?

A   Yes, sir, they do.

Q   And at my request did you check both the records at the Presbyterian and St Joseph's Hospitals to determine how many slipped capital epiphysis have been treated at either of those two hospitals in the past five years?

A   Yes, sir, I did.

MR. ADAMS: Just a moment. We object to such testimony as that. Again, that is hearsay. The information should be brought in by a proper custodian of the hospital so we can test the accuracy of it.

THE COURT: Overruled. You may answer, Doctor, if you know.

Dr. Hurley testified that St. Joseph's Hospital, in the past five years, had five traumatic slipped epiphysis patients, but no preslipped or early slip epiphysis patients. Presbyterian Hospital had seven traumatic slipped epiphysis patients and no preslipped or early slip epiphysis patients.

Plaintiff contends that the nature of this evidence was prejudicial.

*First,* this testimony was not hearsay. Rule 801 of the New Mexico Rules of Evidence [§ 20–4–801, N.M.S.A. 1953 (Rep. Vol. 4, 1975 Supp.)] defines "hearsay":

"Hearsay" is a statement, *other than one made by the declarant* while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. [Emphasis added].

▓ This rule is not applicable because Dr. Hurley's statements were not dependent, in whole or in part, on the competency and credibility of some person other than himself. 31A C.J.S. Evidence § 192 (1964); 29 Am.Jur.2d Evidence § 493 (1967). For example, see *Chiordi v. Jernigan*, 46 N.M. 396, 129 P.2d 640 (1942); *Brown v. General Insurance Company of America*, 70 N.M. 46, 369 P.2d 968 (1962).

▓ *Second*, the issue is whether the hospital records were necessary to test the accuracy of Dr. Hurley's testimony. The hospital records are the best evidence. Rule 1002 of the New Mexico Rules of Evidence [§ 20–4–1002, N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.)] provides:

To prove the content of a writing * * * the original writing * * * is required, *except as otherwise provided in these rules* or by statute. [Emphasis added].

Rule 1004(4) provides:

The original is not required, and other evidence of the contents of a writing * * * is admissible if—

* * * * * *

(4) Collateral Matters. *The writing * * * is not closely related to a controlling issue.* [Emphasis added].

The interpretation of this rule is a matter of first impression.

The purpose and construction of Rules of Evidence is stated in Rule 102 [§ 20–4–102, N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.)]:

These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

The purpose of this rule is a common sense approach to the application of the Rules of Evidence when a problem arises in the construction of the rules.

For a discussion of collateral matters involved in Rule 1004(4), See 5 Weinstein's Evidence, United States Rules § 1004(4) [01] (1975); 4 Wigmore, Evidence § 1252 (Chadbourn rev. 1972); McCormick, Evidence § 200 (1954).

Wigmore says:

Whether a document is "collateral" is practically a question whether it is important enough under all the circumstances to need production; and the judge presiding over the trial is fittest to determine this question finally (§ 16 supra). [§ 1252 at pp. 595–96].

▓ 1 Wigmore, Evidence § 16 is devoted to "Judicial Discretion as applied to Admissibility; Distinction between Discretion and Unappealable Rulings." We believe that in each case, specific application of the exception provided in Rule 1004(4) rests in the judicial discretion of the trial court.

The only illustration of the rule in New Mexico is found in *State v. Goodrich*, 24 N.M. 660, 176 P. 813 (1918). Defendant was convicted of the crime of assault with a deadly weapon in a dispute over a land title. Defendant and one Calender differed with regard to the right of possession and use of certain lands in Quay County. Over objection of defendant, the State was permitted to show by parol evidence that Calender claimed the ownership or the right of possession of the lands. The Court said:

The contention of appellant is that the best evidence rule should have been applied and that evidence of such right by parol evidence was of a secondary nature. This issue as to the ownership or right of possession of said land was only collaterally involved. The principle issue was: Did appellant assault Calender with intent to kill him? Under such circumstances, the rule laid down in 17 Cyc. 484, as follows, is decisive of the contention:

"Where the title to real estate is not in issue but is only collaterally involved, or where it is necessary for a party to make only a prima facie showing of ownership, the best evi-

dence rule is not applicable, and the fact of title or prima facie right of ownership may be established by parol evidence."

[24 N.M. at 663, 176 P. at 814].

In the instant case, the controlling issue is: Was Dr. Hurley negligent, during the examination of plaintiff, to fail to discover a slipped or slipping capital femur epiphysis in its early stages? Under such circumstances, we hold that information about the hospital records was not a controlling issue in the case. These records were only collaterally involved. Parol evidence was admissible to establish the number of cases of epiphysis in the hospital records. In any event, the trial court did not abuse its discretion in allowing such parol evidence.

Other claims of error are without merit.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.