599 P.2d 1086

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Dennis B. VIALPANDO, Defendant-Appellant.**

**No. 3763.**

Court of Appeals of New Mexico.

June 28, 1979.

Eileen R. Mandel, Lauer & Mandel, Santa
Fe, for defendant-appellant.

**292**

Jeff Bingaman, Atty. Gen., Michael A. Kauffman, Ralph W. Muxlow, II, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WALTERS, Judge.

Defendant was convicted of aggravated burglary, robbery, aggravated battery, and criminal sexual penetration in the second degree. He raises eight issues on appeal. We discuss them in order:

1. *Denial of Pre-trial Motion to Suppress Line-up Identification*

Defendant maintains that the line-up of six similarly-dressed persons, four months after the incidents charged, was impermissibly suggestive and conducive to misidentification. Five of the participants were within one or two inches of 65–66 inches tall, and the other was noticeably taller; two had facial hair; all were in their early twenties or late teens. The victim, a Catholic nun, made two separate observations of all the men in the line-up, heard them speak, and she then asked to look at two of them, one of whom was defendant, the third time. She identified defendant among the six, and again after seeing only two the third time. He was the shortest of the group and wore a mustache. She recognized him because of his "mean expression . . . black mustache . . . vicious eyes," and his voice sounded the same as she remembered, the "voice that sounded like the man" who had spoken to her at the time of the assault. She was positive in her identification.

The assertions of suggestiveness and attendant misidentification are said to rest upon (1) the fact of the discrepancy in height, defendant being the shortest person in the line-up; (2) the fact that defendant and only one other person had facial hair and the assailant had been described as having a moustache; (3) the lapse of time from the date of the incident to the date of the line-up; (4) the fact that the Sister believed the assailant would be in the line-up; and (5) the fact that it was the only identification that the Sister ever made of the defendant as her assailant. The trial court, in denying the motion to suppress, commented that defendant and two others appeared to be the same height. The victim observed that some of the men in the line-up had very obviously just shaved their mustaches, and she felt that inclusion of one mustached participant might have been an attempt to trick or confuse her. She identified defendant, however, because of his height, his voice, a "kind of Spanish-English accent," the black mustache, the "mean, vengeful" expression, and his "vicious" eyes. There was no uncertainty in her selection of defendant from the group. These specific details of identification dispose of all but the fourth factor enumerated above. However, the victim was not at any time during her identification of defendant told that anyone in the line-up was suspect, nor were any suggestions whatever made to her that she should identify defendant or anyone else. Cf., *State v. Torres*, 81 N.M. 521, 469 P.2d 166 (Ct.App. 1970). Although she felt that the line-up participants probably were "being held" for some reason and that one of them might be the person who attacked her, she was not assisted in or swayed from her positive identification of defendant. It is for the trier of fact to determine the weight and sufficiency of the evidence, including all reasonable inferences. *State v. Keyonnie*, 91 N.M. 146, 571 P.2d 413 (1977). Considering the totality of the circumstances surrounding the line-up, it was neither impermissibly suggestive nor conducive to misidentification. *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *State v. Lara*, 92 N.M. 274, 587 P.2d 52 (Ct.App. 1978).

2. *Denial of Second Motion to Suppress Line-up Identification*

During the trial, defense counsel again moved to suppress the line-up identification, contending two frailties in its validity: (1) there was an indication that defendant's

mental capacity was below normal and (2) he was not represented by counsel at the line-up. He does not argue the first contention in this appeal.

There was no in-court identification in this case, the victim being an 80 year-old woman with a terminal illness who was out of the state at the time of trial. In her video-taped deposition, which was admitted as evidence, she described her assailant and how she identified defendant at the time of the line-up. No claim is made that the person referred to in the victim's deposition was not the same person tried in this case. But since this was an out-of-court identification, defendant urges that the absence of counsel at the line-up identification violated his Sixth Amendment right to counsel.

■ In denying the second motion to suppress, the trial court did not expressly rule that it was untimely, but we take notice of Rule 18(c), N.M.R.Crim.P., requiring that a motion to suppress be filed within twenty days after entry of a plea unless waived by the court for good cause. The first motion to suppress was timely filed, but it made no claim of unconstitutional deprivation of counsel. The second motion, during trial, was made almost nine months later. The motion properly made could have been denied on the basis of untimeliness alone, no waiver of the time requirement appearing in the record.

Nevertheless, we discuss the requirement of counsel at line-up procedures under the facts of this case, assuming the motion was denied on the merits rather than as a violation of procedural rules. Vialpando was in custody awaiting sentence on charges to which he had pled guilty at the time of the line-up, and he was represented by an attorney on the other unrelated matters. He had not been charged with any of the crimes of which he was convicted in this case, but at the time of the line-up he was a prime suspect.

*United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) is the beacon case regarding the requirement of legal representative for line-up participants, and it was concerned with a line-up, of which the accused was a member, occurring after his indictment. It was there held that because conducting a line-up without notice to and in the absence of defendant's counsel denies the accused his Sixth and Fourteenth Amendment rights to counsel at a "critical stage" of the prosecution, in-court identification by witnesses who attended the line-up must be excluded. The Court was asked in *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), to extend the exclusionary rule of *Wade* to those line-ups conducted *before* indictment or filing of charges. It declined to do so, holding that when the

> government has committed itself to prosecute, and . . . the adverse positions of government and defendant have solidified [,i]t is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guaranties of the Sixth Amendment are applicable.

We cannot agree with appellant's assertion that "several pre-*Kirby* New Mexico cases have indicated that a suspect is entitled to counsel in pre-indictment line-ups." The cases cited to us, *State v. Samora*, 83 N.M. 222, 490 P.2d 480 (Ct.App.1971), and *State v. Carrothers*, 79 N.M. 347, 443 P.2d 517 (Ct.App.1968), dealt, respectively, with an inadvertent out-of-court identification of defendant *after* arrest for the charge on which he was tried, and with the admissibility of an in-court identification questionably free of any taint of suggestions made during an out-of-court identification *after* defendant had been charged *and* an attorney appointed to represent him.

We note other cases decided by this court, e. g., *State v. Clark*, 80 N.M. 91, 451 P.2d 995 (Ct.App.1969) and *State v. McCarty*, 82 N.M. 515, 484 P.2d 357 (Ct.App.1971), concerning out-of-court identification without counsel present, but in both of those cases the concern was with the effect of possible taint of in-court identification by reason of

the pre-trial confrontations in the absence of attorneys for the defendants. In neither case was it the mere fact that counsel was not present, nor merely that both defendants had been arrested at the times the out-of-court identifications were made, that occupied the court's attention. The question of the *independence* of the in-trial identifications, free of any influence from the out-of-court identifications, was the sole concern on the issue of trial identification in both *Clark* and *McCarty.*

■ We do not have an in-court identification here. Thus, our inquiry goes strictly to the fairness of the pre-indictment line-up at a time when defendant was not represented by an attorney for these crimes. Although defendant argues that he was not asked if he wished representation at the line-up, we are not referred to any evidence in support of that argument. Perhaps, if defendant's counsel on the charge for which he was awaiting sentence had been called, he would have attended the line-up; perhaps not. It is clear that he was not defendant's attorney on these charges; defendant had not been charged.

In the exercise of judgment on the side of caution rather than precise legality, and with the benefit of hindsight attending the inevitability of an appeal on every possible ground, district attorneys might, in the future, carefully arrange for notification to all possible counsel before conducting line-ups or out-of-court identification sessions. However, the failure to do so in this case is not unconstitutional because defendant was neither charged nor represented by counsel in this matter at the time the line-up was held.

■ Returning, then, to the question of the fairness of the line-up, this has already been answered in our discussion of appellant's first point. The trial court determined, in "the totality of the circumstances" and from the clear and unequivocal deposition testimony of the victim, that the line-up was "fundamentally fair and not impermissibly suggestive." This is the test stated in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and ad-

hered to in *State v. McCarty, supra.* The trial court did not err in refusing to grant defendant's second motion to suppress.

### 3. *Use of the Victim's Videotaped Deposition*

■ The issue here raised is whether the State carried its burden under Rule of Evidence 804(a)(4) and (b)(1) to show the unavailability of its principal witness. Rule 804 defines unavailability of a witness to include situations wherein the declarant "is unable to be present or to testify at the hearing because of . . . then existing physical . . . illness or infirmity," and permits the use of deposition testimony in such situations of unavailability if the deposition was "taken . . . in the course of the same or another proceeding, [and] if the party against whom the testimony is . . . offered . . . had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination."

Rule 29(n) of N.M.R.Crim.P. specifically provides for the use of depositions in criminal proceedings, as follows:

At the trial, or at any hearing, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used:

(1) if the witness is dead;

(2) if the witness is unable to attend to testify because of illness or infirmity;

(3) if the party offering the deposition has been unable to procure the attendance of the witness by subpoena;

(4) if the witness is out of the state, his presence cannot be secured by subpoena or other lawful means and his absence was not procured by the party offering the deposition; and

(5) to contradict or impeach the witness.

If only part of a deposition is offered in evidence by a party, any adverse party may require him to offer any other part or parts relevant to the part offered, and any party may introduce any other parts, subject to the rules of evidence.

Defendant argues that the sworn letter of the victim's doctor that he had advised his patient, who was under his care and treatment for arteriosclerotic heart disease, osteoarthritis, phlebitis, and chronic lymphocytic leukemia, that she was not well enough to travel from Michigan to New Mexico for any further trial proceedings; a letter from the victim herself to the same effect and that the long trip, at her advanced age, would be dangerous to her health; a letter from another doctor also advising against travelling to the trial; and the prosecutor's statements that he had talked with the victim two days earlier regarding her condition and about a subpoena that had been sent to her (not in accordance with the Uniform Act to Secure Attendance of Witnesses from Without State in Criminal Proceedings, §§ 31–8–1 through 31–8–6, N.M.S.A.1978), were insufficient to satisfy Rule 804 so as to call Rule 29(n) into operation.

It is true that a few New Mexico cases have required strict compliance with all reasonable means to procure attendance by process, including use of the Uniform Act, before a witness may be declared unavailable under *Rule 804(a)(5)*, or his deposition admitted under *Rule 29(n)(4)*. *State v. Waits*, 92 N.M. 275, 587 P.2d 53 (Ct.App. 1978); *Madrid v. Scholes*, 89 N.M. 15, 546 P.2d 863 (Ct.App.1976); *State v. Berry*, 86 N.M. 138, 520 P.2d 558 (Ct.App.1974); *State v. Barela*, 86 N.M. 104, 519 P.2d 1185 (Ct. App.1974). But we are here dealing with unavailability by reason of subsection (a)(4) of Rule 804, and use of deposition testimony under (n)(2) of Rule 29. It is clear from a common-sense reading that all of the subsections of both rules are disjunctive; if *any* of the reasons exist for excusing attendance or receiving deposition testimony, the court may apply the rules and proceed with the trial in accordance with the provisions of those rules. In none of the cases above cited was any reason given for nonattendance of the witness other than that he was out-of-state, or that a New Mexico subpoena was ineffective to procure attendance of an out-of-state witness. There was no suggestion that any of the other situations of unavailability—death, illness, lack of memory, refusal to testify, exemption by order of the court—or reasons for use of deposition testimony—death, illness, impeachment—were present. Those cases dealt only with the fact that the witnesses purportedly were out of the jurisdiction and due diligence had not been exercised to procure attendance at trial by means of process or other lawful means.

■ We do not have that situation here. Two days after the indictment against defendant was filed in district court, an order for the Sister's deposition was entered based upon the State's written representations that she was 79 years old at that time, terminally ill, and possibly unable to attend the trial. She was cross-examined regarding her health at the deposition, eight months before trial, and related that she was retired, and although she felt well, that she had a heart condition, had been hospitalized with blood clots, and was suffering with leukemia. At the time of trial she was eighty years old. According to her doctor's "medical judgment," she was not well enough to travel or participate in the trial.

Despite the State's enumeration of three grounds for admission of the deposition, unavailability on any ground is sufficient. The principal witness was not unavailable because her attendance had not been diligently pursued through process; she was unavailable because she was ill and infirm. Rule 804(a)(4); Rule 29(n)(2). None of the cases from other jurisdictions to which defendant refers us contained facts of debility even remotely approaching the situation in this case.

It was not error for the trial judge, who considered the writings "clothed with the indicia of reliability" Rule 804(b)(6), and who took "the totality of the circumstances of this case into consideration," including the witness's "advanced age and the condition of her health," to admit her deposition at trial.

### 4. *Denial of Motion for Mistrial*

During the course of the trial a correctional officer was called to testify regarding

his observation of a Dominican cross around the neck of defendant subsequent to the crimes charged against him. The Sister's Dominican cross was missing after she was attacked on May 23, 1977. The assistant district attorney asked a leading question, objection to which was sustained, and another was asked. The defense again objected, and the following ensued:

THE COURT: Mr. Campos, you have asked the same question to which the Court sustained the objection. Mr. Ortega, have you ever seen Dennis Vialpando?

A. Yes, sir.

THE COURT: When?

A. The first time was when he was in the State Penitentiary approximately in 1975. He was paroled from there.

THE COURT: Have you seen him at any time since May 23, 1977.

A. Yes, sir at Santa Fe County Jail.

THE COURT: And when was that?

A. That was approximately May 28.

THE COURT: What, if anything, did he have in his possession—

MR. LAUER: May we approach the bench? (Discussion off the record)

Counsel moved for a mistrial outside the presence of the jury, urging that the inference of defendant's prior criminal record arising from the witness's testimony was impermissibly prejudicial to defendant. The court examined defendant's record and discovered that he had been held at the penitentiary in July 1975 for safekeeping, and then said:

THE COURT: I'm going to deny the motion for mistrial. I am willing to give the jury any kind of an admonition that you might desire. I'm willing to advise the jury to completely disregard any references made by this witness to Mr. Vialpando at any time prior to May 23, 1975 [sic]. I'm willing to go further and to advise the jury that Mr. Vialpando was not, in fact, an inmate at the penitentiary in 1975. What would you desire in the way of—I'm willing to refrain from giving any admonition if you desire I not give an

admonition. The choice is yours . . . .

■ We recognize the prevailing rule prohibiting introduction of evidence indicating a defendant's prior criminal record, unless presented to rebut character evidence offered by the accused. *State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966); N.M.R.Evid. 404(b), N.M.S.A.1978. In *Rowell* and the cases cited to us, however, the prejudicial evidence either was deliberately induced through questioning by the prosecutor who intended that the objectionable response be made by the witness, or was a questionably prejudicial answer to an inquiry from the defense. We note here that the witness's response was totally unexpected by the court and the attorneys; that although an objection was not made immediately, counsel did move for a mistrial and this could be deemed a timely objection. *State v. Baca*, 89 N.M. 204, 549 P.2d 282 (1976).

■ Nevertheless, the court offered "any kind of admonition" the defense wished and even though the offer was refused, because the objectionable portion of the response was totally unsolicited, unexpected, and was susceptible to cure by any or all of the admonitions proposed by the court, we cannot say that the court did not weigh the danger of unfair prejudice against the probative value of the remainder of the witness's identification evidence, and reach a correct ruling. We are particularly inclined to this view because of the language of our Supreme Court in *Baca, supra*, where, in considering a similarly surprising remark by a State's witness, it declared a distinction between "those comments which can be directly attributed to the prosecutor and those comments incorporated within the testimony of a witness" in determining whether a mistrial or reversal of a conviction must result. It declined to hold a witness's unsolicited, improper comment in that case a mandatory ground for mistrial.

We further hesitate to find error in the trial court's denial of a mistrial because of two additional considerations: First, New

Mexico has frequently held that a prompt admonition from the court to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which otherwise might result. *State v. Pace*, 80 N.M. 364, 456 P.2d 197 (1969); *State v. Ferguson*, 77 N.M. 441, 423 P.2d 872 (1967); and this court has ruled that an offer to admonish, even though declined, is sufficient to support denial of a motion for mistrial. *State v. Carlton*, 83 N.M. 644, 495 P.2d 1091 (Ct.App.1972). Upon these precedents, the circumstances of this case, and the reason for no admonition being given, we cannot rule that a mistrial was mandated. The trial court would be placed in the intolerable position of never being able to cure unwanted and spontaneous errors in testimony if we held that defendant could control the trial's progress by refusing to permit a possibly-curative admonition and yet rely on its absence to assert error.

■ Secondly, we have recently addressed the issue of deliberately calling a prior criminal record to the attention of the jury, contrary to Rule 404(b), N.M.R.Evid., *State v. Gutierrez*, State Bar of New Mexico Bar Bull. and Adv.Ops., Vol. 18, p. 229 (April 12, 1979), and we there said that receipt of inadmissible evidence is not reversible error when other evidence of defendant's guilt is so persuasive that under no reasonable probability could the improper evidence have induced the jury's verdict. The converse of that principle is the necessity of finding that there was no reasonable probability of a guilty verdict without the inadmissible evidence. The other evidence in this case meets the *Gutierrez* test. Defendant was positively identified by the victim of his crimes; he was seen on two occasions wearing the type of rare and unusual religious cross stolen from the victim at the time the crimes were committed; the victim's unequivocal identification of defendant as her assailant was corroborated by three witnesses who were present at the time the identification took place. We think the other evidence of defendant's guilt was amply strong and convincing to overcome any prejudice he may have suffered from the unsolicited testimony of the officer.

■ Therefore, considering all of the factors relevant to determining this point on appeal, especially mindful of the lack of any improper motive preceding the witness's unprompted utterance and the trial court's offer to repair any harm done, and the compelling evidence of defendant's guilt, we hold the denial of the motion for mistrial free from error in this case.

### 5. *Admission of Police Officer's Prior Written Statement*

Defense counsel used two prior written statements of the police officer who testified at trial that he saw defendant in possession of a Dominican cross on two separate occasions. The witness was cross-examined on the statements to illustrate discrepancies in his remembrance of the dates of those observations at the times of giving the statement and testifying at trial; and to stress that he had been shown two crosses by the officer to whom he gave the prior statements.

■ Rule 801(d)(1)(B) removes the hearsay objectionability from witness's prior consistent "statement" if it is offered "to rebut an express or implied charge against him of recent fabrication *or* improper influence *or* motive." If the prior statement is also inconsistent with the witness's trial testimony, that too is a non-hearsay "written assertion." Rule 801(d)(1)(A).

The defense agrees it used the statements, defendant's Exhibits B and C, for purposes of impeachment. Counsel argued to the trial court that the statements were inadmissible because they were hearsay. On appeal, we are asked to declare the court's admission of the entire statements, offered by the State after the witness was cross-examined on them, reversible error because the consistent portions were not excised before they were offered and received as evidence.

■ The hearsay objection below was insufficient. The rule expressly excepts a document of this sort from the definition of

hearsay. In addition, the witness was questioned, with respect to Exhibit B, regarding the date contained in the first of the statement's two paragraphs, and his attention was then directed to the totality of the second paragraph. The witness was next asked to read Exhibit C and respond regarding the date he had first seen defendant wearing the cross. He was then asked to read the second page of the Exhibit, and he testified with respect to the crosses he had been shown at the time the statement was recorded. It was necessary that he read the entire first and second pages to answer the questions put to him by defense counsel. If the statements reinforced the witness's testimony at trial, that was the risk appellant took in attempting to use them for impeachment or to imply that the witness's testimony was not worthy of belief by reason of "inconsistent[ency] . . recent fabrication . · . improper influence or motive." Rule 801(d)(1).

Our Rule 801 is identical to the federal rule. We take notice of the federal Advisory Committee's note discussing this rule, and particularly subdivision (d)(1)(B) relating to prior consistent statements, where it is said:

> Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive but not as substantive evidence. Under the rule they are substantive evidence. The prior statement is consistent with the testimony given on the stand, and, if the opposite party wishes to open the door for its admission in evidence, no sound reason is apparent why it should not be received generally.

The commentary quoted is a natural concomitant of Evidence Rule 106.

█ We look further to cases which have discussed admission of prior consistent written statements. It is apparent that they consider the "statement" referred to in Rule 801 as a whole document rather than sentences or portions thereof. See *State v. Lovato*, 91 N.M. 712, 580 P.2d 138 (Ct.App. 1978); *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977); *State v. Foster*, 87 N.M. 155,

530 P.2d 949 (Ct.App.1974). Indeed, in *Sundberg v. Hurley*, 89 N.M. 511, 554 P.2d 673 (Ct.App.1976), this court approved the ruling below which denied opposing counsel the right to question a witness regarding a prior written statement, or admit any portion of it into evidence, unless the entire statement were offered.

In any event, both because the witness was referred to the entirety of both documents in defendant's attempt to impeach, and because no proper objection was made to admission of the exhibits, we will not disturb the trial court's ruling regarding admissibility.

### 6. Granting the State's Motion to Amend Indictment

█ Before the jury was instructed, the State moved to amend Count IV of the indictment, which had charged upon its return by the grand jury that defendant had caused the victim

> to engage in sexual intercourse, and did so by use of force and coercion which resulted in personal injury to Sister Malachi Laithwaite; and did so in the commission of other felonies, to wit: AGGRAVATED BURGLARY, AGGRAVATED BATTERY AND ROBBERY * * *.

to read:

> . . . *or* did so in the commission of . . . AGGRAVATED BURGLARY, AGGRAVATED BATTERY, *OR* ROBBERY.

Defendant claims error in the court's allowance, although he acknowledges that the last "or" was an amendment allowed by the court two weeks before trial.

Rules 7(a), R.Crim.P., permits amendment of an indictment "at any time prior to verdict" to correct any defect, error, omission or repugnancy if thereby no additional or different offense be charged, and if defendant's substantial rights are not prejudiced. Rule 7(c) allows amendment of any variance to conform to the evidence "at any time." The State requested the amendment to conform to the evidence and so that the charge likewise would conform to

the criminal statute, § 30–9–11, N.M.S.A. 1978, under which defendant was charged. Defendant objected below only on the ground of timeliness, not on the basis of "fundamental fairness" argued here.

Defendant, prior to trial, sought and was granted disclosure of all exculpatory information; names, addresses and statements of expected State witnesses; and all of defendant's statements, grand jury testimony, prior mental, physical or criminal records, papers or books, intended to be used at trial. Mental and polygraph examinations of defendant were allowed; depositions were taken; pretrial motions were heard. There was no surprise to defendant as a result of changing the conjunctive to the disjunctive in the indictment, and he was on notice from the beginning that he must defend against each element originally alleged. Compare *State v. Wilburn,* 90 N.M. 436, 564 P.2d 1000 (Ct.App.1977); *see State v. Dunlap,* 90 N.M. 732, 568 P.2d 258 (Ct. App.1977). Defendant has not "affirmatively shown that the defendant was in fact prejudiced . . . in his defense upon the merits." *State v. Lucero,* 79 N.M. 131, 133, 440 P.2d 806, 808 (Ct.App.1968).

■ Moreover, there was substantial evidence of sexual intercourse caused by force and coercion used upon the Sister, resulting in injuries sufficient to require her hospitalization for approximately ten days immediately afterward; there was also substantial evidence to support the guilty verdicts on Counts I, II, and III. Defendant can point to no real prejudice to the defendant arising from the amendment. He relies solely on the abstruse proposition that *if* the State had been unable to prove both of the elements originally charged by reason of its use of "and"—that is, intercourse by force and coercion and resulting in personal injury to the victim, *and* commission of another felony—defendant could not have been convicted on Count IV. But it would appear from the truncated record brought up on appeal that the defense, which consisted wholly of cross-examination of the State's witnesses, was directed against all of the crimes and elements charged in all counts;

and there is no substantial evidence whatever that all of the crimes charged, and all of the elements of each crime, were not proved. Consequently, whether the indictment was amended or not, defendant suffered no detriment. The verdicts and the evidence support the conviction of the crime charged in Count IV on all elements alleged.

Because the objection below was insufficient to preserve any error pressed on appeal, and because, in any event, defendant was not prejudiced, we find no abuse in the trial court's allowance of the amendment.

### 7. *Refusal to Permit the Jury to Review the Victim's Deposition*

The Sister's videotaped deposition was received as evidence at trial. During their deliberations the jury asked to have the deposition; and we assume (as did appellant) that the jury was referring to the typewritten transcription of the victim's videotaped testimony. The court denied the request, stating into the record that "[a]ll of the exhibits that have been admitted into evidence have been sent into the jury room for the jury." Error is asserted in the judge's ruling, defendant contending that Rule 42(c), N.M.R.Crim.P., mandates submission to the jury of any exhibit received in evidence upon the jury's request to review the exhibit during its deliberation.

■ Nothing in the record indicates that the typed transcription was admitted as an exhibit; thus, defendant mistakenly relies on Rule 42(c). An appellant must provide a sufficient record to review matters asserted on appeal. *State v. Vallejos,* 86 N.M. 39, 519 P.2d 135 (Ct.App.1974). Rule 43(a) provides for the juror's having portions of any witness's testimony, read to them in the court's discretion, after they begin their deliberations, but apparently the jury did not pursue that course and the record doesn't disclose that it was suggested to the court by counsel. *State v. Fried,* 92 N.M. 202, 585 P.2d 647 (Ct.App.1978), cited as authority by appellant, does not apply because there was no doubt in that case that the tape requested by the jury to be heard had been

received as an exhibit and, further, only those portions of the tape relating to the matter requested to be reheard by the jury were played. The facts there and here are not similar.

█ This point is without merit, and there was no error in the court's refusal to allow the typewritten version of Sister's testimony into the jury room.

### 8. *Refusal to Request Pre-sentence Report*

The trial court declined, despite defense counsel's request, to order a pre-sentence report on defendant before imposing sentence. Appellant acknowledges that Rule 56(a), N.M.R.Crim.P., authorizing the court to obtain such a report, rests within the sound discretion of the court. He insists, however, that discretion was abused because (1) the Model Penal Code, the National Council on Crime and Delinquency, and the ABA recommend that the court order a presentence report any time a felony conviction obtains or incarceration for more than one year is possible; (2) defense counsel expressly requested the report and urged the question of defendant's mental condition as a reason for its necessity; (3) it was unfair to defendant to expect his counsel to proceed immediately after "a lengthy trial" to present to the court an argument or evidence concerning sentencing, and to deny defendant the hearing before sentencing that he automatically is afforded when a presentence report is ordered, and (4) the presentence report received by the court upon an earlier conviction of defendant for property crimes is insufficient reason to deny the request for presentence report after conviction of crimes against one's person "where a substantial period of incarceration (14 months) had elapsed between commission of the offenses in this case and the time of convictions therefore [and a] presentence report would have informed the court as to the effect, if any, of this imprisonment upon defendant."

As a general rule, and for first offenders, the recommendations of the organizations cited in defendant's reason (1) above are sound, but they are, nevertheless, merely recommendations. We are governed by Rule 56, N.M.R.Crim.P., N.M.S.A.1978.

█ Reason (3) argued by defendant is patently vacuous. The trial court disposed of Reasons (2) and (4) by openly and distinctly expressing his reasons for refusing to order the presentence report:

THE COURT: I see no reason for any delay in making final disposition in this case. I have become aware of the facts of the case, the circumstances surrounding the offenses, throughout a seven-day trial. I am aware of Mr. Vialpando's background, I being the Judge that sentenced him to the penitentiary before I had a presentence report relating to Mr. Vialpando.

.        .        .        .

There is contained in the record proper in this case a rather lengthy report by Dr. Joel Hochman, a psychiatrist, and also by Dr. Trost, a psychologist. The question of the defendant's capacity to stand trial was gone into. It was resolved by the Court in advance of the trial. No issue as to his legal responsibility, his mental capacity to be legally responsible was raised in this case and the Court was aware at the time of sentencing upon the charge that he is now serving time on, about prior facets of his mental condition and if some other psychiatrist may have a different opinion, I see no reason for any delay in making final disposition in this case, based upon the statements made by you.

.        .        .        .

I feel that I am in just as good a position today to make final disposition as I will be at any time in the future.

Obtaining a presentence report is not a matter of right. *State v. Follis,* 81 N.M. 690, 692, 472 P.2d 655 (Ct.App.1970). Since ordering presentence report is not mandatory, it is axiomatic that the trial judge is endowed with the authority to impose sentence immediately after trial, absent an abuse of discretion in so doing. *State v.*

*Mireles,* 84 N.M. 146, 150, 500 P.2d 431 (Ct.App.1972).

As the discussion above reveals, there was no abuse of discretion—indeed, the trial court recited cogent, compelling reasons for declining to seek a presentence investigation before entering sentence against the defendant.

Finding no error in the matters presented in this appeal, the guilty verdicts and sentence imposed are affirmed.

IT IS SO ORDERED.

HERNANDEZ and ANDREWS, JJ., concur.