Certiorari Granted, December 20, 2013, No. 34,400

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-013

Filing Date: October 8, 2013

Docket No. 32,139

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

EDWARD ARMIJO,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### OPINION

**FRY, Judge.**

**{1}** Defendant Edward Armijo appeals his first-offense conviction for driving under the influence of intoxicating liquor (DWI) entered by the metropolitan court and subsequently affirmed by the district court following on-record review. In this appeal, Defendant asserts four theories of trial error, including error in jury selection, in the admission of hearsay, in

1

the admission of improper opinion testimony, and cumulative error. Having reviewed the metropolitan court proceedings, we agree that—in the specific context of this case—there is a reasonable probability that the jury's verdict may have been induced by the unqualified opinion testimony of a witness for the State. We therefore reverse on that basis. Because the remaining issues are unlikely to recur on remand, we express no opinion on the other errors claimed by Defendant.

**BACKGROUND**

**{2}**     Defendant was tried pursuant to a criminal complaint charging him with DWI, speeding, and failure to maintain a traffic lane. Because the jury acquitted him of failing to maintain a traffic lane and Defendant does not appeal his conviction for speeding, only the conviction for DWI is at issue in this appeal. With regard to that charge, the State's evidence at trial consisted of the results of a breath alcohol test and the testimony of two police officers. The State's first witness, Officer Eric Hammon, testified that he used radar to determine that Defendant was driving forty-five miles per hour on a road with a posted speed limit of thirty-five miles per hour. Officer Hammon also saw Defendant's car drift to the right within his lane so that the passenger-side tires of his car touched the right-hand lane line. Officer Hammon pulled Defendant over for speeding and failure to maintain his lane. Officer Hammon testified that when he approached the car, Defendant was behind the wheel, there were two passengers in the car, and he "could smell the distinct odor of an alcoholic beverage emitting from him." Officer Hammon also testified that Defendant's eyes were "bloodshot and watery," that he "could detect some slurring of his speech," and that Defendant reported having had "one beer earlier in the evening."

**{3}**     Officer Hammon called for a DWI unit to continue the investigation. Officer Marisa Martinez arrived ten minutes later to conduct a DWI investigation. Officer Martinez was the State's second witness. She testified that Defendant's eyes were bloodshot and watery, that she noticed an odor of alcohol, and that the Defendant told her he had a beer ten minutes before he was pulled over. Officer Martinez then administered three field sobriety tests: a horizontal gaze nystagmus test, a walk-and-turn test, and a one-leg-stand test. Defendant performed the horizontal gaze nystagmus test as instructed. The walk-and-turn test required Defendant to walk in a straight line for nine steps with his hands at his sides while touching heel-to-toe, to turn around, and to walk back in a similar fashion. In performing that test, Defendant missed touching his heel to his toes twice, did not turn in the way Officer Martinez instructed, and once raised his arms from his sides. The one-leg-stand test required Defendant to raise one foot six inches off the ground and maintain that pose while counting out loud for thirty seconds. Officer Martinez testified that, while doing so, Defendant "was swaying while balancing and he raised his arms for balance."

**{4}**     Officer Martinez determined that Defendant "was showing the signs of impairment," handcuffed him, and took him to the transport center to test his breath alcohol content. Officer Martinez tested two breath samples and the breath card showing the test results was admitted into evidence at trial. That card showed Defendant's breath scores for the two

samples to be .06 and .05 grams per 210 liters of breath. At the close of Officer Martinez's direct examination, the State asked her whether .06 and .05 are "a particularly high breath score," before rephrasing the question to, "is that breath score over the legal limit?" Defendant's objection to that question was sustained, and the State passed the witness to the defense.

**{5}** Defendant then cross-examined Officer Martinez and the State conducted a re-direct examination. At the end of that re-direct examination, the State returned to the topic of Defendant's breath alcohol content, asking with regard to his breath scores of .06 and .05, "what does that indicate to you?" Defendant's objection to that question was sustained, and the State asked "is a .06/.05 consistent with [D]efendant's admission of one beer?" Officer Martinez answered "no, sir," and the State followed up with the question "is a .06/.05 consistent with more than one beer?" Defendant objected again, the objection was again sustained, and the court instructed the jury "you are to disregard the line of questioning."

**{6}** When the State then rested, Defendant moved for a directed verdict on all charges, which was denied except as to driving with a blood or breath alcohol content of .08 or more. *See* NMSA 1978, § 66-8-102(C)(1) (2008) (defining *per se* DWI). Defendant then rested. The jury ultimately returned its verdict acquitting Defendant of failure to maintain a traffic lane and convicting on the charges of speeding and driving under the influence. Defendant appealed to the district court, which affirmed, and this appeal follows.

**DISCUSSION**

**{7}** Defendant argues that Officer Martinez's assessment of his breath alcohol content results was "unqualified opinion testimony" that constituted "incurable error." Defendant is correct that Officer Martinez's opinion regarding the amount of alcohol he must have consumed in order to produce breath scores of .06/.05 was inadmissible. The State's questions regarding whether those scores suggested that Defendant had consumed "one beer" or "more than one beer" sought opinion testimony for which no foundation was laid at trial. *See* Rule 11-703 NMRA (providing foundation requirements for expert testimony in the form of an opinion). Without such a foundation, the witness was not qualified to offer her opinion on the matter. *See State v. Alberico*, 1993-NMSC-047, ¶¶ 41-54, 116 N.M. 156, 861 P.2d 192.

**{8}** In response, the State asserts that the testimony at issue amounts to no more than harmless error, specifically relying upon the metropolitan court's admonishment to the jury that it should "disregard this line of questioning." Notably, the State neither argues that the questions asked were proper nor suggests how any answers Officer Martinez gave to those questions could possibly have been admissible. Instead, the State claims that "[t]he trial judge's immediate curative instruction remedied the prosecution's isolated improper question and Officer Martinez's answer."

**{9}** It is true that, "*[g]enerally*, a prompt admonition from the court to the [j]ury to

3

disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result." *State v. Newman*, 1989-NMCA-086, ¶ 19, 109 N.M. 263, 784 P.2d 1006 (emphasis added). However, where "inadmissible testimony [is] intentionally elicited by the prosecution," the general rule does not apply and, "regardless of whether a trial court admonishes the jury not to consider the testimony, [appellate courts] must determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *State v. Gonzales*, 2000-NMSC-028, ¶ 39, 129 N.M. 556, 11 P.3d 131 *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110; *accord State v. Ruiz*, 2003-NMCA-069, ¶ 6, 133 N.M. 717, 68 P.3d 957; *see also State v. Saavedra*, 1985-NMSC-077, ¶ 13, 103 N.M. 282, 705 P.2d 1133 (holding that admonitory instruction could cure intentionally elicited testimony only in the absence of a reasonable probability that inadmissible evidence induced the verdict), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783; *cf. State v. Bartlett*, 1981-NMCA-019, ¶ 18, 96 N.M. 415, 631 P.2d 321 (finding prosecutor's facially improper question to be "prejudicial error and no attempt to admonish the jury to forget the question could possibly erase the effects").

**{10}** Thus, before determining that a curative instruction has cured what would otherwise be error, we must consider whether the offending testimony was unsolicited or was, instead, elicited by the State. In *State v. Vialpando*, the trial court's offer to give an admonitory instruction to the jury was deemed to have cured the improper testimony of a witness who was asked when he had first met the defendant and who responded, "when he was in the State Penitentiary." 1979-NMCA-083, ¶ 21, 93 N.M. 289, 599 P.2d 1086. On appeal, this Court acknowledged that such testimony would require a mistrial if "deliberately induced through questioning by the prosecutor who intended that the objectionable response be made by the witness." *Id.* ¶ 23. In that case, however, "the witness's response was totally unexpected by the court and the attorneys." *Id.* As a result, the error was curable by way of instruction, and not so prejudicial as to require a new trial. *Id.* ¶ 25. In so holding, this Court was "especially mindful of the lack of any improper motive preceding the witness's unprompted utterance." *Id.* ¶ 27.

**{11}** In contrast, similar testimony was considered sufficiently prejudicial to require a new trial in *Saavedra*. In that case, a witness who was asked how long he had known the defendant responded "[s]ince he got out of the penitentiary." 1985-NMSC-077, ¶ 8. On appeal, our Supreme Court noted that the prosecutor had asked an identical question of the same witness at a grand jury hearing and received "an almost identical answer." *Id.* ¶ 9. Thus, the Court noted that—unlike in *Vialpando*—a "lack of improper motive" could not be presumed in *Saavedra*, and the Court conducted a review for harmless error, ultimately concluding that a new trial was required. 1985-NMSC-077, ¶ 12. This requirement that appellate courts review for prejudice, notwithstanding a curative instruction, rests upon the sound policy that the prosecution should not be permitted to rely upon a trial court's curative instruction to remove the taint of incompetent evidence that it has intentionally placed before a jury. As has often been noted in similar circumstances:

4

> When the error is exposed on appeal, it is met by the stereotyped argument
> that it is not apparent it in any wise influenced the minds of the jury. The
> reply the law makes to such suggestion is: that, after injecting it into the case
> to influence the jury, the prosecutor ought not to be heard to say, after he has
> secured a conviction, it was harmless[.]

*State v. Frank*, 1979-NMSC-012, ¶ 26, 92 N.M. 456, 589 P.2d 1047 (internal quotation marks and citation omitted).

**{12}** In this case, the State drew repeated objections to questions intended to elicit Officer Martinez's unqualified and inadmissible opinion regarding the significance of Defendant's breath scores of .06/.05. On appeal, the State makes no attempt to justify the questions and, having reviewed the proceedings below, we can identify no proper purpose for those questions. Thus, the question of whether Defendant was prejudiced by Officer Martinez's improper testimony cannot be answered simply by relying upon the metropolitan court's curative instruction; instead, we must actually determine—in the particular context of this case—whether that inadmissible testimony was prejudicial or harmless.

**{13}** For purposes of harmless error review, violations of the rules of evidence are non-constitutional error. *State v. Marquez*, 2009-NMSC-055, ¶ 20, 147 N.M. 386, 223 P.3d 931. Thus, the error at issue in this case can be deemed harmless only if "there is no reasonable probability the error affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (emphasis, internal quotation marks, and citation omitted). As recently explained by our Supreme Court, "harmless error review necessarily requires a case-by-case analysis . . . [of] whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id.* ¶ 44 (internal quotation marks and citation omitted). In determining whether the impermissible evidence contributed to Defendant's conviction, we must "evaluate all of the circumstances surrounding the error." *Id.* ¶ 43. Those circumstances include "the error itself . . . includ[ing] an examination of the source of the error and the emphasis placed upon the error," as well as the properly admitted evidence, at least to the extent such evidence provides "context for understanding how the error arose and what role it may have played in the trial proceedings." *Id.*

**{14}** Because there was no dispute that Defendant was driving a car, the only contested fact for the jury to decide with regard to the conviction here appealed was whether he was impaired by alcohol while doing so. As the jury was instructed at trial, it was to determine whether "as a result of drinking liquor the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public." *See* UJI 14-4501 NMRA. The State's evidence relevant to such a finding consisted of the breath alcohol content test results as well as the officers' testimony regarding speeding, bloodshot eyes, slurred speech, the odor of alcohol, and Defendant's performance on the field sobriety tests.

**{15}** On appeal, Defendant points out that much of the evidence typically introduced in

5

a DWI case was not present in this case. For instance, when Officer Hammon pulled him over for speeding, Defendant promptly and properly stopped his car. He was also cooperative and behaved appropriately throughout his encounters with both Officer Hammon and Officer Martinez. He displayed no signs of impairment while getting out of his car and walking with Officer Martinez to the area in which she conducted the field sobriety tests. Defendant also points out that once Officer Martinez began the field sobriety tests, he performed the horizontal gaze nystagmus test as instructed and performed the other tests with only minor errors. And, finally, he agreed to submit to a chemical test that established his breath alcohol content at only a .06/.05.

**{16}** Taken as a whole, the evidence introduced at trial was the type of evidence that is generally sufficient to support a conviction under the "impaired to the slightest degree" standard. *See, e.g.*, *State v. Soto*, 2007-NMCA-077, ¶¶ 32-34, 142 N.M. 32, 162 P.3d 187 (collecting cases). Our task in this appeal, however, is not to determine whether the evidence was sufficient to support a conviction. *See Tollardo*, 2012-NMSC-008, ¶ 40 (noting "[t]here are some circumstances where . . . the evidence of a defendant's guilt is sufficient even in the absence of the [district] court's error, that still require the reviewing court to reverse the conviction if the jury's verdict appears to have been tainted by error (internal quotation marks and citation omitted)). Instead, we must determine whether there is a reasonable probability that Officer Martinez's unqualified opinion testimony "could have induced the jury's verdict." *Gonzales*, 2000-NMSC-028, ¶ 39. Keeping that task in mind, we note that the admissible evidence in this case could have supported either a conviction or an acquittal, since a reasonable jury could have returned either verdict. As a result, it is possible that the actual verdict rendered in this case was a result of the jury's consideration of Officer Martinez's improper testimony.

**{17}** *Tollardo* also directs us to consider "the importance of the erroneously admitted evidence in the prosecution's case as well as whether the error was cumulative or instead introduced new facts." 2012-NMSC-008, ¶ 43 (alterations, internal quotation marks, and citation omitted). In this regard, we note that—apart from the State's attempts to elicit Officer Martinez's opinion—no evidence was introduced at trial to establish whether, how, or to what extent a .06 or .05 breath alcohol content is indicative of impairment. Thus, Officer Martinez's unqualified opinion that Defendant would not have had breath alcohol contents of .06 and .05 if he had only consumed one beer—if accepted by the jurors—may have provided them with their only means of assessing the breath scores. Officer Martinez's impermissible testimony clearly suggested to the jury that Defendant must have consumed more than the one beer he admitted to drinking prior to the traffic stop. Further, because jurors may be unfamiliar with breath alcohol contents and this jury was given no guidance on that topic, these jurors may have used Officer Martinez's testimony suggesting that Defendant consumed more than one beer as their primary means of determining whether his breath scores indicated that he was impaired at the time he was pulled over. If they did so, the inadmissible testimony may have played a decisive role in the trial proceedings. *See id.* (instructing appellate courts to consider "what role [the error] may have played in the trial proceedings"). And, under the circumstances of this case, there is no sense in which Officer

Martinez's improper testimony could be considered cumulative.

**{18}** Finally, Officer Martinez's improper testimony in this case, like the improper material in *Tollardo*, "was the last piece of information that the jury received before formal instructions and closing arguments, magnifying the risk that the error would factor into the jury's assessment of [the d]efendant's guilt." *Id.* ¶ 52. Our review of the trial proceedings in this case leaves us convinced that there is a reasonable probability that the jury's verdict was the product of inadmissible testimony. The State's final line of questions for Officer Martinez—both on direct examination and on re-direct—sought her unqualified opinion regarding the meaning and significance of Defendant's breath alcohol content. Given the fact that no other evidence was available to guide the jury in assessing that breath alcohol content, particularly when considered with the ambiguity of the properly-admitted evidence, it is apparent that the verdict in this case may have been induced by Officer Martinez's improperly elicited testimony. Having reviewed "all of the circumstances surrounding the error," *id.* ¶ 43, we conclude that the error at issue is prejudicial enough to require a new trial.

**{19}    IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *State v. Armijo*, No. 32,139**

**APPEAL AND ERROR**
Harmless Error
Standard of Review
Prejudicial Error
Remand

**CRIMINAL LAW**
Driving While Intoxicated

**GOVERNMENT**
District Attorney

**EVIDENCE**
Blood/Breath Tests
Expert Witness
Scientific Evidence & *Daubert* Standard

**JURISDICTION**
Metropolitan Court