415 P.2d 364

**Zoe MOZERT, Plaintiff-Appellant,**

**v.**

**Otto NOEDING, Defendant-Appellee.**

**No. 7830.**

Supreme Court of New Mexico.

June 13, 1966.

George T. Reynolds, Taos, McRae, Ussery, Mims, Ortega & Kitts, Albuquerque, for appellant.

McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Mary C. Walters, James E. Casados, Albuquerque, for appellee.

## OPINION

LaFEL E. OMAN, Judge, Court of Appeals.

This is a suit for personal injuries sustained by plaintiff-appellant, Zoe Mozert, as a result of a fall into an unguarded stairwell situate in a storeroom on premises owned by defendant-appellee, Otto Noeding. Plaintiff seeks reversal of a judgment in favor of defendant entered upon a verdict directed by the trial court at the close of plaintiff's case in chief.

There are some questions as to what the facts were in certain particulars. However, in considering the motion for a directed verdict at the close of her case, plaintiff was entitled to have the evidence, together with all reasonable inferences deducible therefrom, viewed in the light most favorable to her. Sandoval v. Brown, 66 N.M. 235, 346 P.2d 551; Romero v. Shelton, 70 N.M. 425, 374 P.2d 301.

In so viewing the evidence, we find that defendant owned and operated, on

the same premises where the storeroom was situate, an art gallery, gift shop, museum and some apartments. The storeroom was used primarily in connection with the apartments, was small, had a dirt floor, had no windows, and had but one door. There was one overhead light fixture in the room which was equipped with a 25-watt bulb. Near one end of the room and diagonally opposite the doorway was an unguarded stairwell leading to a small basement room in which there was a water heater. The stairs themselves were constructed of rough lumber.

On the day of her fall, plaintiff had gone to the gallery for the purpose of getting a "pegboard," which was approximately 2½ feet in width by 6 feet in length, and which defendant had theretofore indicated she could have. When she asked him for the pegboard on the day in question, he informed her that he believed it was in the storeroom. She had never been in the storeroom, which was situate about 200 feet from the gallery. As he started for the storeroom, he stated to her that he was not sure what piece of pegboard she had in mind and that she had better come with him and look for it.

They proceeded together to the storeroom which he unlocked. He entered and she followed. The door was left open to admit light, but it was still dim inside.

The room contained a work table, items of furniture, tools and junk, which were stored primarily against the walls, leaving a somewhat limited area in which to walk about. However, the floor in the open area was not cluttered.

Upon entering the room, plaintiff looked about in an area which was slightly visible by reason of the light entering through the doorway. As her eyes became more accustomed to the dim light, she looked and moved further into the room in her search for the pegboard. She came to what appeared to her to be a partition. She took a small step and bent forward to peer around this partition. About that time the dirt floor at the edge of the stairwell broke under her feet and she fell down the stairs.

Plaintiff and defendant had been in this small room searching for the pegboard for a period of from two to four minutes before her fall. He had not turned on the light and had not warned her of the presence of the stairwell, athough he was fully familiar with the storeroom and with the fact that the unguarded stairwell was difficult to see unless a person knew it was there.

In her brief in chief, plaintiff has set forth three points relied on for reversal, but has broken them down into five points for argument. Her argument under the first three of these points is that

there was sufficient evidence to submit to the jury the question of defendant's negligence in maintaining a dangerous and hazardous condition in the store-room, and in failing to warn or otherwise protect her against harm from such condition, regardless of whether her status was that of an invitee or a licensee.

██ Her position as to her status is that there was evidence from which the jury could have found her to be an invitee, but, even if she were a licensee, there was still evidence from which the jury could have found defendant breached his duties owing to her under the circumstances of the case.

Our review of the record convinces us that plaintiff is correct. Defendant is also in accord. He does not resist plaintiff's arguments under these points, but asserts in his answer brief that for the sake of the argument he will assume that it can reasonably be deduced from the evidence that a dangerous condition existed and that he failed to warn plaintiff, knowing she was unaware of the hazard. He then argues that the trial court was still correct in directing the verdict for him, because plaintiff's evidence established as a matter of law that she was contributorily negligent. He asserts that "the sole basis of appellee's [defendant's] motion for directed verdict was appellant's [plaintiff's] own negligence, proximately contributing to her accident."

In oral argument before this court he conceded that there was evidence from which the jury might have found him to be negligent, but he again strongly urged that the evidence established plaintiff's contributory negligence as a matter of law.

However, in the arguments made to the trial court on the motion for a directed verdict, a great deal was said by both parties as to the status of plaintiff at the time of her fall and the duties owed to her by defendant. In view of this, we feel it proper to comment briefly upon the status of plaintiff on defendant's premises and the duty owed to her by defendant.

██ It would serve no useful purpose to detail the evidence as to the relationship between the parties during the six weeks of their acquaintance prior to the accident, and which led up to the search for the pegboard. On a retrial of the case, and after the defendant has adduced his evidence, there will undoubtedly be additional evidentiary matters to be considered by the court, and very likely by the jury, on the question of whether the plaintiff was a licensee or a business invitee. If she was not a business invitee, she was certainly a licensee.

A business invitee, or business visitor, is defined in Restatement of the Law of Torts 2d, § 332(3) as follows:

"A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

See Sandoval v. Board of Regents of N. M. State Univ., 75 N.M. 261, 403 P.2d 699, wherein we quoted and adopted the definition from 2 Restatement of the Law of Torts, § 332, which is identical with the above quoted definition, except there has been eliminated from the definition in the second edition the words "or permitted."

In Crenshaw v. Firestone Tire & Rubber Company, 72 N.M. 84, 380 P.2d 828, and again in Sandoval v. Board of Regents, supra, we quoted with approval the rule relative to the duties owed by a possessor of land to his business invitees as set forth in 2 Restatement of the Law of Torts, § 343. This rule of liability is now set forth in Restatement of the Law of Torts 2d, § 343, in the following language:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

If on retrial of this case the court should determine as a matter of law, or the jury should determine, under proper instructions by the court, that plaintiff was a licensee, then the applicable rule of liability is set forth in Restatement of the Law of Torts 2d, § 342, as follows:

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and risk involved, and

(c) the licensees do not know or have reason to know of the condition and risk involved."

A licensee is defined in Restatement of the Law of Torts 2d, § 330, as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent."

■ Under the facts of this case as set forth above, it is quite apparent that it was a question for the jury to decide whether or not defendant had breached the duties owing by him to plaintiff, regardless of whether plaintiff was on defendant's premises as a business invitee or as a licensee.

As heretofore stated, defendant seeks support for the directed verdict upon the ground that plaintiff's conduct, in moving forward into the dimly lighted room until she fell into the stairwell, constituted a failure on her part to exercise ordinary care for her own safety, and thus precluded her from recovery as a matter of law. He relies heavily upon the case of Boyce v. Brewington, 49 N.M. 107, 158 P.2d 124, 163 A.L.R. 583. In the annotation appearing in 163 A.L.R. at pages 587–656, entitled, "Entering Dark Place on Unfamiliar Premises as Contributory Negligence" a great number of cases have been cited wherein plaintiff has been found to have been contributorily negligent as a matter of law under the particular facts, and a great number of cases have also been cited wherein the question of contributory negligence has been held to be a jury question under the particular facts of those cases.

■ Ordinarily, the question of contributory negligence is a fact question to be determined by the jury. Rivera v. An-cient City Oil Corporation, 61 N.M. 473, 302 P.2d 953. The question of contributory negligence is properly taken from the jury only when reasonable minds cannot differ on the question and readily reach the conclusion that plaintiff's conduct falls below the standard to which he should have conformed for his own protection, and that this negligent conduct on his part proximately contributed with the negligence of the defendant in causing the injury. Button v. Metz, 66 N.M. 485, 349 P.2d 1047; Canter v. Lowrey, 69 N.M. 81, 364 P.2d 140.

■ In this case, there is evidence from which it can be found, or reasonably inferred, that the plaintiff, at the express or implied invitation of the defendant, was aiding him in a search for an object in a small and dimly lighted storeroom; she was moving cautiously and as her senses of sight and feeling directed her; she knew that defendant, who was familiar with the room, was also moving about and searching for the object; this search had continued from two to four minutes, and, by reason of the small size of the room, neither of them could have moved more than a few feet during this period of time; the defendant had neither warned plaintiff of the danger of the unguarded stairwell, nor had he reduced the danger by turning on the light, even though such was readily at hand; and finally, she was precipitated

.downward by the breaking of the earth under her féet at· the edge of the stair-well.

The facts of this case are quite unlike those of Boyce v. Brewington, supra. In that case, in relating the evidence which we held sufficient to bar plaintiff's recovery, we stated:

"The evidence is uncontradicted that the plaintiff when inspecting the property found the door to the cellar or basement closed. The door opened inward and we find the plaintiff standing at the entrance of a cellar door; no lights, bar or barrier are about the flight of steps; the natural light is inadequate; she is inspecting the house with a view of buying it; the darkness confronting her when opening the door to the cellar or basement was sufficient notice to warn her of dangers she was unable to see. The failure of the plaintiff to exercise ordinary care for her own safety when opening a closed door and taking a step forward into an unlighted stairway, thereby contributing to her own injury, as a matter of law will preclude a recovery on her part under the evidence in this case, and it was error for the trial court to refuse to direct a verdict in favor of defendant."

Under the facts here, we cannot say that reasonable minds are compelled to reach the conclusion that plaintiff was negligent and that her negligence proximately contributed to cause her injury. The question was one for the jury. In addition to the case of Boyce v. Brewington, supra, and the cases cited in the annotation in 163 A.L.R. supra, see Barakos v. Sponduris, 64 N.M. 125, 325 P.2d 712; Falen v. Monessen Amusement Co., 363 Pa. 168, 69 A.2d 65, 14 A.L.R.2d 775.

The remaining point of argument, which is in no way determinative of this appeal, is that the court erred in refusing to admit into evidence a written statement made by the defendant within a week or two after the accident. The language which plaintiff particularly wished admitted was that "There is no guard rail and you can't see the hole unless you know it is there."

The statement was offered as an admission of a party. It was excluded by the trial court on the ground that it was not admissible as "direct proof of any of the facts stated therein." The trial court announced that it could be used for impeachment purposes only, and only if defendant should be called as a witness and made statements contradictory to those contained in the written statement. The court did, however, state as a part of his reasons for refusal of the tender that "In view of the fact that the statement was

 **403**

made a week or two later, I question its use for any purpose except impeachment. I was under the impression when we were talking earlier that it was made the next day or two. Now from the statement, it appears to be a week or two later."

Defendant was called as an adverse witness, and the particular matters of concern to plaintiff contained in the statement were largely developed by the examination of defendant. However, since we anticipate this question may very well arise again on retrial, we call attention to the fact that an admission of a party is admissible as substantive evidence, and not merely as impeachment. An admission may have impeachment value, but its admissibility is not dependent on this element, and its probative value is not confined to this purpose alone. The time of the making of the admission is generally immaterial on the question of its admissibility, and a statement made within a week or two of an event such as the one in this case would hardly seem so remote in time as to preclude its admission. See Wigmore on Evidence, 3rd Ed. [1940], Vol. IV, §§ 1048, 1051; Jones on Evidence, Civil and Crim., 5th Ed., Vol. 2, §§ 334, 336; The Chamberlayne Trial Evidence, Tompkins [1936], 2d Ed., §§ 513, 515, 520, 534, 540–541; McCormick on Evidence [1954], § 239.

It follows from what has been said that the judgment must be reversed and the cause remanded for a new trial.

It is so ordered.

CARMODY, C. J., and CHAVEZ, J., concur.