661 P.2d 498

**Howard Dean AITKEN, Plaintiff-Appellant,**

v.

**Carl STARR, Nancy Starr, Public Service Company of New Mexico, Armando Giannini, Lois M. Giannini, Armand J. Giannini, d/b/a Mariano Investment Company, Frank McCormick and Rosemary McCormick, Defendants-Appellees.**

**No. 5752.**

Court of Appeals of New Mexico.

March 1, 1983.

Certiorari Denied April 11, 1983.

David A. Freedman, Nancy Hollander, Freedman, Boyd & Daniels, P.A., Albuquerque, for plaintiff-appellant.

Charles B. Larrabee, W. Mark Mowery, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellees Starrs and McCormicks.

Thomas F. Keleher, Margaret E. Davidson, Keleher & McLeod, P.A., Albuquerque, for defendant-appellee PNM.

Charles G. Berry, Patricia Ortiz, Marchiondo & Berry, P.A., Albuquerque, for defendants-appellees Gianninis.

## OPINION

HENDLEY, Judge.

Plaintiff brought a personal injury action to recover damages for injuries he received when he came into contact with an electrical line. There were four groups of defendants: Public Service Company of New Mexico (PNM), the Starrs and McCormicks (present owners of the property), the Gianninis (past owners of the property), and the Chavezes (owners of the trailer plaintiff was on when injured). The trial court granted motions for summary judgment to the Starrs and McCormicks, the Gianninis, and the Chavezes. The trial court also granted PNM a partial summary judgment pertaining to that part of plaintiff's claim which relied on the doctrine of strict liability. Plaintiff appealed and the Chavezes filed a cross-appeal. Plaintiff settled with the Chavezes. Plaintiff did not appeal the partial summary judgment granted to PNM. The issue on appeal relates to the summary judgments which were granted to the Starrs and McCormicks and the Gianninis.

Before reaching the merits of the appeal, a motion was filed prior to submission to strike PNM's "Answer Brief." PNM's brief is in support of plaintiff's appeal—that the trial court be reversed as to the Starrs and McCormicks and the Gianninis. PNM did not file a notice of appeal or cross-appeal. N.M.R.Civ.App. 3(b), N.M. S.A.1978, states:

(b) **Review of error against appellee.** If errors have been committed against an appellee and the same have been preserved for review and presented by points concisely stated, an appellee may, without taking a cross-appeal, obtain review of such errors for the purpose of enabling the appellate court to affirm, notwithstanding errors committed against the appellant, or to remand the cause for a new trial.

In *Frederick v. Younger Van Lines,* 74 N.M. 320, 393 P.2d 438 (1964), under the predecessor rule, which was almost identical, our Supreme Court explained the rule as follows:

Rule 17(2) permits review of rulings adverse to appellee which need be considered only in the event the appeal is found to have merit, *but because of which it is contended the case should nevertheless be affirmed.* To obtain a review under Rule 17(2) no notice of cross-appeal is required, but merely the making of a point in the appellee's brief of the claimed error together with argument thereon. (Emphasis added.)

Accordingly, PNM does not meet the requirement of the rule. The Clerk of the Court of Appeals is directed to strike the brief from the record.

*Review Standard*

*Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972), states that the burden is on the defendants to show an absence of a genuine issue of fact or that they are entitled to summary judgment as a matter of law for some other reason. After defendants have made a prima facie showing of entitlement, the burden shifts to plaintiff to show there are genuine issues of fact and defendants are not entitled to summary judgment as a matter of law. The inferences which plaintiff is entitled to have drawn from all matters properly before and considered by the trial court must be reasonable. We review the affidavits and depositions of record in light of the foregoing.

*Facts*

Prior to August 21, 1979, the Gianninis owned the Paradise Acres Mobile Home Park. On that date they sold the trailer park to the Starrs and the McCormicks.

In March, 1979, the Chavezes purchased a 70–ft. mobile home. In that same month, the home was set up in the Paradise Acres Mobile Home Park. As the Gianninis were not home, Nancy Starr, a relative of the Gianninis, instructed the men who were moving the trailer for the Chavezes to place the trailer in Space No. 27. Parallel to the south boundary of the Paradise Acres Mobile Home Park high voltage wires, owned and maintained by PNM, were stretched between wooden poles. It appears that the trailer was parked in such a manner as to be partially underneath the electrical lines and partially within PNM's easement.

Nancy Starr, upon becoming one of the owners of the park, tried to make regular inspections of the park. She had walked along the south side of the property once or twice. Mrs. Starr testified in her deposition that she did not believe the Chavezes' mobile home was located in such a manner that it was under the power lines. She thought that the power lines were "like in her [Chavez'] yard." Mrs. Starr had noticed that some of the power lines were running through trees and had assumed the responsibility of calling in a "tree man" to inspect the trees to see if they needed to be topped. She then called PNM to top the trees. The Starrs had also lived in Space 27 for a short time.

After moving into the park, the Chavezes put up three C.B. antennas—one, approximately 40 feet high on the east side of the trailer, is the one involved in this suit. When Mr. Chavez put up the antenna, he encountered no difficulties with the power lines. Prior to the date of plaintiff's injury, the antenna and the power lines had never come into contact with each other.

The antenna involved in the accident weighed 40 to 60 pounds and was approximately 46 to 48 feet high. It had three radial arms at the top which were approximately 12 inches in length. About 15 feet from the top of the antenna were 3 or 4 radial arms that were approximately 8 to 12 feet in length.

There was conflicting evidence as to the height of PNM's lines at the time of the accident. Testimony shows that the height of the lines was somewhere between 6 inches to 20 feet from the top of the trailer. The lines were not hidden from Aitken's view.

On December 18, 1979, at approximately 4:00 p.m., Aitken was injured when the antenna he was carrying came into contact with the 7,200 volt electrical distribution line. Aitken and Gene Ryan had been removing the antennas and skirting from the Chavezes' mobile home in preparation for a move. The Chavezes had been evicted from the trailer park. Aitken and Ryan had started work at about 10:00 a.m.

Aitken knew the power lines were over one end of the trailer. He recognized that they were dangerous. He had noticed them on previous occasions. He had also gone to that end of the trailer that morning to tell Ryan something and, at that time, said he made a mental note about having to stay away from the lines. He attempted to avoid the lines, but struck them nevertheless. He was aware of the danger of electrical lines. He had worked around power lines as a construction worker. He realized that the lines were probably high voltage.

He testified in his deposition that he was carrying the antenna horizontally to the ground and was distracted when he looked down to make sure he was not going to trip over the vent pipes in the roof of the trailer, when he was shocked. There was other testimony that Aitken, while on the roof, was holding the antenna vertically with most of it over his head with Ryan holding the other end on the ground; that Aitken hollered at Ryan to let go because they were getting too close to the power lines; that Ryan let go and Aitken did not, and that the antenna fell into the wires.

There were two lines on the poles running by the trailer. The bottom line was a neutral line and the top line was a 7,200 volt distribution line.

*Gianninis*

Restatement (Second) of Torts, §§ 352 and 353 (1965), state:

§ 352. Dangerous Conditions Existing at Time Vendor Transfers Possession

Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

§ 353. Undisclosed Dangerous Conditions Known to Vendor

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

Comment (a) to § 352 states in part: The vendee is required to make his own inspection of the premises, and the vendor is not responsible to him for their defective condition, existing at the time of transfer. Still less is he liable to any third person who may come upon the land, even though such entry is in the right of the vendee.

To this rule an exception has developed as to undisclosed dangerous conditions known to the vendor, as to which see § 353.

*See Begay v. Livingston,* 99 N.M. 359, 658 P.2d 434 (Ct.App.1981), *reversed in part on other grounds, Livingston v. Begay,* 98 N.M. 712, 652 P.2d 734 (1982).

Under § 352, a vendor of land is not subject to liability to his vendee or others caused by a dangerous condition which existed when the vendee took possession unless the exception in § 353 takes effect. That exception comes into effect only if the vendor conceals or fails to disclose a condition which involves an unreasonable risk to persons on the land, if: the vendee does not know, or have reason to know, of the condition or risk involved, and the vendor does know and has reason to believe the vendee will not discover the condition or risk involved.

Viewing the depositions pursuant to the *Goodman, supra,* rule, the vendees knew that the power lines existed prior to the injury to plaintiff. They were obvious. The exception stated in § 353 does not take effect.

Summary judgment was properly granted to the Gianninis.

*Starrs and McCormicks*

Defendants Starrs and McCormicks contend that Aitken was a licensee, not an invitee as the trial court found. Plaintiff, without citing any authority, argues in his reply brief that this Court should not allow this issue to be presented. His argument is basically that, minus a cross-appeal, defendants should not be allowed to raise the issue.

This Court is not bound by the grounds purportedly used by the trial court as the basis for the granting of summary judgment. *Garrett v. Nissen Corporation,* 84 N.M. 16, 498 P.2d 1359 (1972). We can independently decide whether Aitken was a licensee or invitee and whether under the circumstances defendants were entitled to summary judgment.

The definition of "licensee" and "invitee" adopted in New Mexico courts is found in Restatement (Second) of Torts, §§ 330 and 332 (1965), respectively. *See Mozert v. Noeding,* 76 N.M. 396, 415 P.2d 364 (1966). Those sections read:

§ 330. Licensee Defined

A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent.

§ 332. Invitee Defined

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Comments (g) and (k) to § 332 make it quite clear that in the present case plaintiff was a business visitor.

**g. Visits incidental to business relations of possessor and third persons.** It is not necessary that the visitor shall himself be upon the land for the purposes of the possessor's business. The visit may be for the convenience or arise out of the necessities of others who are themselves upon the land for such a purpose. Thus those who go to a hotel to pay social calls upon the guests or to a railway station to meet passengers or bid them farewell, are business visitors, since it is part of the business of the hotelkeeper and railway to afford the guest and passengers such conveniences. So too, a child taken by a mother or nurse to a shop is a business visitor; and this is true irrespective of whether it is necessary for the customer to take the child with her in order to visit the shop.

\* \* \* \* \* \*

**k.** A person may be a business visitor of a lessor of land although he is merely a gratuitous licensee of the lessee. Thus, a lessor of an apartment in an apartment house or of an office in an office building, who retains the control of the halls, stairways, and other approaches to the apartment or office, holds such parts of the premises open to any person whom his lessee may choose to admit, irrespective of whether the visit of such a person is for his own or the lessee's business pur-pose or whether he comes as a mere social guest or other licensee of the tenant.

Under comments (g) and (k) and the facts of this case, Aitken was a business invitee as to the Starrs and McCormicks.

■ As a business invitee, the Starrs and McCormicks owed a duty to plaintiff. N.M. U.J.I.Civ. 13.9 and 13.10, N.M.S.A.1978 (1980 Repl.Pamph.). Whether that duty was performed by PNM and the Starrs and McCormicks to plaintiff presents a question of fact to be determined by the fact finder. *See O'Neil v. Furr's, Inc.,* 82 N.M. 793, 487 P.2d 495 (Ct.App.1971); *Proctor v. Waxler,* 84 N.M. 361, 503 P.2d 644 (1972).

The granting of summary judgment as to the Starrs and McCormicks was improper.

Reversed and remanded.

IT IS SO ORDERED.

DONNELLY, J., concurs.

BIVINS, J., specially concurs.

BIVINS, Judge (specially concurring).

I concur in the affirmance of summary judgment in favor the Gianninis for the reasons stated. I also concur in the reversal of summary judgment in favor of the Starrs and McCormicks but for different reasons.

The parties presented this matter to the trial court and to this Court with respect to legal duties as between landowners and invitees or licensees. In holding summary judgment in favor of the Starrs and McCormicks improper, the opinion refers to legal duties owed plaintiff by those defendants, citing N.M.U.J.I.Civ. 13.9 and 13.10, N.M.S.A.1978 (1980 Repl.Pamp.). Those instructions deal with the duty of a landowner to a business invitee arising from a condition of the premises or a known or discoverable danger.

Based on my understanding of the uncontroverted facts, the Starrs and McCormicks, as owners of a mobile home park, rented space 27 to the Chavezes. Even though the latter had received notice of eviction at the time of the accident and were in the process

dismantling the antennae and trailer skirts when the accident occurred, the relationship of landlord-tenant still existed between the Starrs and McCormicks and Chavezes, if not as a matter of law, then as one of fact. Thus, we are concerned here with those principles of law which relate to the duty of a landlord to his tenant or to those entering the premises by the tenant's invitation.

Restatement (Second) of Torts, § 356 (1965) provides:

> Conditions Existing When Lessor Transfers Possession: General Rule
>
> Except as stated in §§ 357–362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession.

To be entitled to summary judgment, the Starrs and McCormicks must have made a prima facie showing of no issue of fact as to any of the exceptions listed in § 356. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972). This not having been done is sufficient reason to deny summary judgment.

While not exhaustive, the following authorities are helpful: *Hogsett v. Hanna,* 41 N.M. 22, 63 P.2d 540 (1936); *Coggins v. Gregorio,* 97 F.2d 948 (10th Cir.1938); *Cotter v. Novak,* 57 N.M. 639, 261 P.2d 827 (1953); *Lommori v. Milner Hotels,* 63 N.M. 342, 319 P.2d 949 (1957).

For the reasons stated, I would reverse the summary judgment in favor of the Starrs and McCormicks.