[No. B201336. Second Dist., Div. Five. Dec. 19, 2008.]

SUSANA ONTIVEROS, Plaintiff and Appellant, v.
24 HOUR FITNESS USA, INC., Defendant and Respondent.

**COUNSEL**

The Halpern Law Firm and Jesse L. Halpern for Plaintiff and Appellant.

Prindle, Decker & Amaro, Jack C. Nick and Cynthia A. Palin for Defendant and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

Plaintiff and appellant Susana Ontiveros (plaintiff) sustained personal injuries while exercising on a stairstep machine at a fitness center owned and operated by defendant and respondent 24 Hour Fitness USA, Inc.[1] (defendant). She sued defendant, asserting, inter alia, a claim for strict product liability. The trial court granted defendant's summary judgment motion as to that claim on the grounds that plaintiff acknowledged in her membership agreement that defendant could not be held liable for defective exercise equipment and that defendant provided "recreational services."

■ On appeal, plaintiff contends that there are triable issues of fact concerning whether the dominant purpose of plaintiff's transaction with defendant was for the use of defendant's exercise machines or for the provision of fitness services. We hold that the undisputed evidence shows that the dominant purpose of plaintiff's membership agreement with defendant was for the provision of fitness services and that as a result, defendant is not strictly liable to plaintiff under a product liability theory of recovery. We therefore affirm the judgment.

## FACTUAL BACKGROUND

### A. Defendant's Facts[2]

At the premises where plaintiff was injured, defendant operated a fitness center at which members could utilize various exercise equipment and participate in aerobic exercise classes, among other activities, pursuant to the terms of a membership agreement between defendant and the member. According to defendant's risk management analyst, each of defendant's exercise facilities offered the following equipment, services, and amenities: free weights; cardiovascular conditioning machines and other specialized fitness equipment; group exercises such as aerobics, dance classes, and yoga;

---

[1] Plaintiff erroneously sued "24 Hour Fitness Corporation," but subsequently added as a Doe defendant the correct entity, 24 Hour Fitness USA, Inc.

[2] Defendant's facts are taken from defendant's separate statement of undisputed facts and the evidence to which it referred in that separate statement. In reviewing a motion for summary judgment, we must consider all the evidence and all of the inferences reasonably drawn therefrom, and we must view such evidence in the light most favorable to the opposing party. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

testing centers to record certain physical characteristics such as blood pressure and weight; an optional introductory membership program that included three sessions with staff trainers; and locker rooms. For additional fees, a member could obtain personal training and nutritional counseling.

Plaintiff entered into a membership agreement with defendant, which was thereafter modified to provide an upgraded membership. Both her original agreement and upgraded agreement contained liability release provisions that included the following language: "You understand and acknowledge that [defendant] is providing recreational services and may not be held liable for defective products. By signing below, you acknowledge and agree that you have read the foregoing and know of the nature of the activities at [defendant's facilities] and you agree to all the terms of the front and back pages of this agreement and acknowledge you have received a copy of it and the membership policies."

The upgraded membership agreement entitled plaintiff to use defendant's facilities, described as "Active," "Express," and "Sport." An "Active" facility referred to a facility that is less than 25,000 square feet, offering fitness amenities such as group exercise classes, weight training, cardiovascular equipment, and locker rooms. A "Sport" facility referred to a facility generally 25,000 to 50,000 square feet, offering the same amenities as the other facilities, as well as further amenities.[3]

As to the incident in question, defendant referred to plaintiff's allegations that she was injured while exercising on stairstep equipment at defendant's facility in Panorama City. According to plaintiff's allegations, due to the failure of a component part, both "steps" of the machine lost all resistance as she was using it, causing plaintiff to fall backwards off the machine onto the floor.

### B. *Plaintiff's Evidence*[4]

Plaintiff did not dispute defendant's facts set forth above or argue that there were conflicting inferences that could be drawn from those facts. Instead, she provided the additional facts set forth in this part.

Plaintiff purchased a membership with defendant because she wanted to lose weight and believed that exercising using defendant's exercise equipment would help her achieve that goal. Plaintiff could not afford to purchase

---

[3] Although the declaration of defendant's risk management analyst provided an explanation of an "Active" and a "Sport" facility, he did not explain the characteristics of an "Express" facility.

[4] Plaintiff's facts are taken from plaintiff's separate statement of disputed facts and the evidence to which she referred in that separate statement.

exercise equipment on her own and believed that using defendant's equipment would be the most cost effective means of obtaining the exercise she wanted.

Because plaintiff was familiar with exercise machines, which she described as simple to use, she did not need instruction, training, or assistance from defendant concerning the use of its exercise machines, and no such instruction, training, or assistance was provided to her by defendant. Although all of defendant's trainers were certified, defendant's staff members that worked in the area where members used exercise equipment were not certified trainers.

Plaintiff could have purchased from defendant, at an additional cost, the services of a trainer and nutritional counseling, but she chose not to do so. Plaintiff did not become a member of defendant's fitness center to take aerobic classes, to check her blood pressure, to determine her body fat, or to use the sauna and steam room. She purchased her membership with defendant for the sole purpose of using exercise equipment.

## PROCEDURAL BACKGROUND

Plaintiff sued defendant,[5] asserting causes of action for premises liability and strict product liability. The trial court heard and granted defendant's summary adjudication motion on the premises liability cause of action, a ruling that plaintiff does not challenge on appeal. Defendant then filed a motion for summary judgment as to the remaining strict product liability cause of action on the ground that the claim "was not actionable against [defendant] as [defendant] was not in the chain of distribution of the allegedly defective exercise equipment which caused her injury." Defendant also relied on the waiver or release language in plaintiff's agreement acknowledging that defendant was providing "recreational services" and could not be held liable for a defective product.

Plaintiff opposed the motion on the ground that defendant was in the chain of distribution; plaintiff's product liability claim could not be waived; and the dominant purpose of plaintiff's membership agreement with defendant was the use of defendant's exercise machines, not the performance of fitness services.

After hearing argument, the trial court granted defendant's motion and entered judgment. According to the trial court, "[Defendant's] motion is granted because there exist no triable issues of material fact, and moving party is entitled to judgment as a matter of law. Plaintiff has acknowledged in

---

[5] See footnote 1, *ante.*

the Club Membership Agreement that [Defendant] 'does not manufacture fitness or other equipment' and that it provides 'recreational services.' "

Plaintiff filed a timely appeal from the judgment of dismissal following the order granting defendant's motion for summary judgment.

## DISCUSSION

### A. *Standard of Review*

"We review the grant of summary judgment de novo. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].) We make 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].) A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has made such a showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.*[, *supra*,] 25 Cal.4th 826, 849, 853 . . . .)" (*Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, 1216–1217 [130 Cal.Rptr.2d 198].)

### B. *Waiver*

To the extent the trial court's order granting summary judgment was based on the waiver or release language in plaintiff's membership agreement, plaintiff argues that, as a matter of public policy, product liability claims cannot be waived, citing *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1743 [22 Cal.Rptr.2d 781]. Because defendant does not address the waiver issue in its brief, we presume defendant concedes the point on appeal.

### C. *Strict Product Liability Claim*[6]

Plaintiff acknowledges that if the dominant purpose of her agreement was to provide fitness services, and not just the use of exercise equipment, she

---

[6] It is not clear from the trial court's order whether the court considered the membership agreement as a waiver of the product liability claim or merely as evidence that the agreement

cannot prevail on her strict product liability claim because defendant would not be in the chain of distribution of the equipment. She contends, however, that there are triable issues of fact concerning the dominant purpose of her transaction with defendant, citing to *Murphy v. E. R. Squibb & Sons, Inc.* (1985) 40 Cal.3d 672 [221 Cal.Rptr. 447, 710 P.2d 247] (*Murphy*). According to plaintiff, her evidence shows that she purchased her membership with defendant for the sole purpose of using the exercise equipment that defendant made available at its fitness facility. She claims she did not need any of the fitness services available to her under the agreement, and defendant did not provide any such services to her. Thus, under plaintiff's view of the evidence, defendant is strictly liable for defects in its equipment.

Defendant agrees that for purposes of the product liability analysis, the key distinction is whether defendant provided a service, in which case it would not be strictly liable for defective equipment, or whether defendant just made equipment available for use, in which case defendant would be strictly liable for defective equipment because defendant would, in effect, be in the chain of distribution. According to defendant, the dominant purpose of its transaction with plaintiff was to provide the various fitness services that were available to plaintiff under her agreement.

■ The general principles of California's product liability law have been summarized in *Bay Summit Community Assn. v. Shell Oil Co.* (1996) 51 Cal.App.4th 762, 772–773 [59 Cal.Rptr.2d 322] (*Bay Summit*). "Our high court first adopted the strict liability doctrine in *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897], holding '[a] manufacturer is strictly liable [to consumers] when an article [it] places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' *Greenman* reasoned the doctrine would 'insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.' (*Id.* at p. 63; see *Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 995 [281 Cal.Rptr. 528, 810 P.2d 549].) The court recognized imposing strict liability would discourage the marketing of unsafe products and was necessary to 'protect[] . . . consumers in an increasingly complex and mechanized society . . . .' (*Daly v. General Motors Corp.* (1978) 20 Cal.3d 725, 733 [144 Cal.Rptr. 380, 575 P.2d 1162]; *Greenman v. Yuba Power Products, Inc., supra,* 59 Cal.2d at p. 63; *Escola v. Coca Cola Bottling Co.* (1944) 24 Cal.2d 453, 461 [150 P.2d 436].) [¶] One

---

was for services, so that strict liability would not apply. Because the parties argued in the trial court and on appeal the issue of whether strict liability applied in this case, we may affirm the summary judgment on that ground even if the trial court's decision was based on waiver. (See Code Civ. Proc., § 437c, subd. (m)(2).)

year later, the court extended the strict liability doctrine to retailers because retailers 'are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products. [Citation.]' (*Vandermark v. Ford Motor Co.* (1964) 61 Cal.2d 256, 262 [37 Cal.Rptr. 896, 391 P.2d 168].) *Vandermark* explained that holding retailers strictly liable would (1) enhance product safety since retailers are in a position to exert pressure on manufacturers; (2) increase the opportunity for an injured consumer to recover since the retailer may be the only entity 'reasonably available' to the consumer; and (3) ensure fair apportionment of risk since retailers may 'adjust the costs of such protection between them in the course of their continuing business relationship.' (*Id.* at pp. 262–263.)" (*Bay Summit, supra,* 51 Cal.App.4th at pp. 772–773.)

"The courts have since applied the doctrine to others similarly involved in the vertical distribution of consumer goods, including lessors of personal property (see *Price v. Shell Oil Co.* (1970) 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722]), developers of mass-produced homes (*Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749]), wholesale and retail distributors (*Barth v. B.F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228 [71 Cal.Rptr. 306]), and licensors (*Garcia v. Halsett* (1970) 3 Cal.App.3d 319 [82 Cal.Rptr. 420] [an operator of a laundromat]). Although these defendants were not necessarily involved in the manufacture or design of the final product, each was responsible for passing the product down the line to the consumer. Thus, the parties were 'able to bear the cost of compensating for injuries' (*Price v. Shell Oil Co., supra,* 2 Cal.3d at p. 252) and 'play[ed] a substantial part in insuring that the product [was] safe or . . . [were] in a position to exert pressure on the manufacturer to that end.' (*Vandermark v. Ford Motor Co., supra,* 61 Cal.2d at p. 262.)" (*Bay Summit, supra,* 51 Cal.App.4th at p. 773.)

Plaintiff relies on the decision in *Murphy, supra,* 40 Cal.3d 672. In that case, the plaintiff filed a personal injury claim against a retail pharmacy and a drug manufacturer alleging injuries from her mother's use of the prescription drug DES (diethylstilbestrol) during pregnancy. As to the plaintiff's product liability claim, the court held that the trial court had correctly granted the pharmacy's motion for judgment on the pleadings. (*Id.* at p. 681.) In doing so, the Court of Appeal observed, "It is critical to the issue posed to determine if the dominant role of a pharmacist in supplying a prescription drug should be characterized as the performance of a service or the sale of a product." (*Id.* at p. 677.) Quoting with approval from the Court of Appeal decision in *Carmichael v. Reitz* (1971) 17 Cal.App.3d 958, 978 [95 Cal.Rptr. 381], the court in *Murphy* stated that the distinction for purposes of the product liability analysis was " 'between a transaction where the primary objective is the acquisition of ownership or use of a product and one where the dominant purpose is to obtain services . . . .' " (*Murphy, supra,* 40 Cal.3d

at p. 677.) The court in *Murphy* also quoted with approval from the decision in *Magrine v. Krasnica* (1967) 94 N.J. Super. 228 [227 A.2d 539, 544], stating, " '[T]he *essence* of the transaction between the retail seller and the consumer relates to the *article sold.* The seller is *in the business* of supplying the product to the consumer. It is that, and that alone, for which he is paid. A dentist or physician offers, and is paid for, his professional services and skill. That is the *essence* of the relationship between him and his patient.' " (*Murphy, supra,* 40 Cal.3d at p. 677.) Based on its analysis of the role of a pharmacist, the court in *Murphy* held that a pharmacy in dispensing prescription drugs is performing a service and therefore is not strictly liable for an inherent defect in a drug. (*Id.* at pp. 676–681.)

Although the decision in *Murphy, supra,* 40 Cal.3d 672, is instructive as to the distinction under the strict liability doctrine between providing a product for use by a consumer and providing a service, it is factually different from this case because *Murphy* involved an actual sale of a product by a professionally licensed defendant. Here, there was no sale and no evidence of services by a licensed professional.

This case is more analogous to the decision relied upon by defendant, *Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248 [38 Cal.Rptr.2d 65] (*Ferrari*). In that case, the plaintiff was a customer injured on a whitewater rafting trip sponsored and conducted by the defendant. She sued the defendant under, inter alia, a product liability theory of recovery. The trial court granted summary judgment on the plaintiff's product liability claim and the Court of Appeal affirmed that ruling. (*Id.* at p. 251.)

In determining whether the defendant river rafting company was strictly liable for the injuries plaintiff suffered as a result of an allegedly defective raft, the court in *Ferrari, supra,* 32 Cal.App.4th 248, analyzed the application of the product liability doctrine in cases where the transaction involved both a product and a service. "Plaintiff contends the raft is a product as contemplated by the doctrine of strict product liability, and defendants are therefore subject to strict liability as licensors of the raft. In a given transaction involving both products and services, liability will often depend upon the defendant's role. For example, an airline passenger injured because of a defect in the craft would have a strict liability claim against the manufacturer. (*McGee v. Cessna Aircraft Co.* [(1978)] 82 Cal.App.3d 1005 [147 Cal.Rptr. 694].) The manufacturer's role is that of a provider of a product, the airplane. On the other hand, the airline operating the plane would be primarily involved in providing a service, i.e., transportation. The airline is itself the end user of the product and imposition of strict liability would be inappropriate." (*Ferrari, supra,* 323 Cal.App.4th at p. 258.)

In support of its analysis, the court in *Ferrari, supra,* 32 Cal.App.4th 248, reviewed several cases, each of which concluded that the defendant did not provide a product for use by a consumer. "In *Pierce* v. *Pacific Gas & Electric Co.* (1985) 166 Cal.App.3d 68 [212 Cal.Rptr. 283], the plaintiff was injured by an electric shock delivered to her home due to a defective transformer. Although we held the defendant could be liable as the provider of a product, i.e., the electricity delivered to the plaintiff's home (*id.* at pp. 83–84), we also concluded the defendant could not 'be held strictly liable in tort for the transformer's defects per se. [Citation.]' (*Id.* at p. 76.) As to the transformer, the defendant was the ultimate user. [¶] In *Pierson* v. *Sharp Memorial Hospital, Inc.* [(1989)] 216 Cal.App.3d 340 [264 Cal.Rptr. 673], the plaintiff was injured during a visit to her husband's hospital room when she fell because of allegedly defective carpet. The court held strict liability inapplicable because the hospital was primarily involved in providing a service. 'A hospital "is engaged in the process of providing everything necessary to furnish the patient with a course of treatment." . . . A patient's room is part of the specialized facilities enabling the patient to receive 24-hour nursing care and immediate access to other vital medical services. . . . The room is an integral component of the professional medical services hospitals provide.' (216 Cal.App.3d at pp. 346–347, citations omitted; accord, *Wagner* v. *Coronet Hotel* (1969) 10 Ariz.App. 296 [458 P.2d 390, 394–395] [hotel not strictly liable for injury to guest caused by allegedly defective bath mat]; *Livingston* v. *Begay* (1982) 98 N.M. 712 [652 P.2d 734, 738–739] [hotel not strictly liable for death allegedly caused by defective room heater]; *Siciliano* v. *Capitol City Shows, Inc.* (1984) 124 N.H. 719 [475 A.2d 19, 25] [amusement park operator not strictly liable for injury caused by allegedly defective ride]; *Bolduc* v. *Herbert Schneider Corp.* (1977) 117 N.H. 566 [374 A.2d 1187] [ski tramway operator not strictly liable for injuries caused by defects in the conveyance].)" (*Ferrari, supra,* 32 Cal.App.4th at pp. 258–259.)

Based on its analysis and review of applicable case law, the court in *Ferrari, supra,* 32 Cal.App.4th 248, 259, concluded, "Defendants did not provide plaintiff with a raft for her to use. They provided a service, i.e., recreational raft transportation on the Colorado River. Defendants provided all the materials for the trip, instructions on rafting safety, and guides to perform the labor and conduct the activities. Use of the raft, like the carpet in *Pierson* v. *Sharp Memorial Hospital, Inc., supra,* [216 Cal.App.3d 340,] was merely an incident to this service. The law of strict product liability does not apply to defendants on these facts."

Plaintiff cites to the decision in *Garcia* v. *Halsett, supra,* 3 Cal.App.3d 319 (*Garcia*), and argues that the facts in that case are closer to the facts of this case than those in *Ferrari, supra,* 32 Cal.App.4th 248. In *Garcia,* the plaintiff minor was injured by a washing machine while doing laundry at the defendant's laundromat. He brought a personal injury action against the

defendant on, inter alia, a strict product liability theory. The trial court entered a judgment against the plaintiff following a jury trial. On appeal, the plaintiff claimed that the trial court erred in refusing to instruct the jury on his strict product liability claim, which claim was based on his assertion that the washing machine that caused his injury was defective. (*Id.* at p. 324.) In reversing the trial court, the Court of Appeal held, "Licensors of personal property, like the manufacturers or retailers or lessors thereof, 'are an integral part of the overall . . . marketing enterprise that should bear the cost of injuries resulting from defective products.' (*Vandermark* v. *Ford Motor Co., supra,* 61 Cal.2d 256, 262; *McClaflin* v. *Bayshore Equipment Rental Co.* [(1969)] 274 Cal.App.2d 446, 452 [79 Cal.Rptr. 337].) [¶] Although respondent is not engaged in the distribution of the product, in the same manner as a manufacturer, retailer or lessor, he does provide the product to the public for use by the public, and consequently does play more than a random and accidental role in the overall marketing enterprise of the product in question. Thus, the rationale of *Greenman* and *Vandermark* applies as logically and desirably to a licensor of chattels as to the manufacturers, retailers and lessors thereof. The trial court should have instructed on the issue of strict liability." (*Garcia, supra,* 3 Cal.App.3d at pp. 325–326.)

Although the facts in the instant case concerning the provision of services are not as compelling as those at issue in *Ferrari, supra,* 32 Cal.App.4th 248, they do support the conclusion that the dominant purpose of plaintiff's membership agreement was to provide fitness services. In addition to entitling her to use exercise equipment, plaintiff's agreement entitled her to engage in aerobics, dance classes, and yoga, among other activities. It also allowed her to take advantage of testing centers where she could check her blood pressure and weight. Thus, unlike in *Garcia, supra,* 3 Cal.App.3d 319, in which the defendant laundromat owner provided washers and dryers for use by customers, and apparently nothing more, there is undisputed evidence here that defendant provided more to members than just the use of exercise machines. That evidence shows that defendant was in the business of providing fitness services and made exercise machines available to members as an incident to those services. Thus, the law of strict product liability does not apply to defendant under the facts of this case, and defendant was therefore entitled to summary judgment on the product liability claim.

That plaintiff chose not to avail herself of the services provided under her membership agreement does not change the essential nature and purpose of that agreement because it is the terms of her agreement, rather than her subjective intentions, that define the dominant purpose of her transaction with defendant. There is no evidence that plaintiff ever explained to defendant that she only wanted to use its exercise machines, not its services, or that the mutual intention of the parties was to exclude such services. Her uncommunicated subjective intent in that regard is therefore irrelevant. (*Reigelsperger v.*

*Siller* (2007) 40 Cal.4th 574, 579–580 [53 Cal.Rptr.3d 887, 150 P.3d 764] [uncommunicated subjective intent irrelevant to mutual consent, which is determined from the reasonable meaning of the words and acts of the parties].) From the language of her agreement and defendant's uncontradicted evidence, we conclude that the dominant purpose of plaintiff's membership agreement was to make available fitness services; accordingly, plaintiff has no valid claim under the strict product liability doctrine.

## DISPOSITION

The judgment of the trial court is affirmed. Defendant is awarded its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.